Juan A. Valles VELAZQUEZ, Plaintiff, Appellant,

v.

Carlos E. CHARDON, etc., et al., Defendants, Appellees.

Agustin Lao COLON, Plaintiff, Appellant,

v.

Carlos E. CHARDON, etc., et al., Defendants, Appellees.

Enelida Rios SALAS, Plaintiff, Appellant,

v.

Carlos E. CHARDON, etc., et al., Defendants, Appellees.

Felipe Odiott MORALES, Plaintiff, Appellant,

v.

Carlos E. CHARDON, etc., et al., Defendants, Appellees.

Nos. 83–1893, 84–1067, 83–1895, 83–1896, 84–1068 and 83–1897.

United States Court of Appeals, First Circuit.

Argued May 8, 1984.

Decided June 21, 1984.

Sheldon H. Nahmod, Chicago, Ill., with whom Hiram R. Cancio, Harry R. Nadal-Arcelay, Jaime R. Nadal-Arcelay, Jesus R. Rabell-Mendez, Cancio, Nadal & Rivera, San Juan, P.R., and Gregory R. Sun, Chicago, Ill., were on brief, for appellants.

Alberto J. Perez-Hernandez, with whom Alex Gonzalez, and Law Offices of Alex Gonzalez, San Juan, P.R., were on brief, for appellees.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

COFFIN, Circuit Judge.

This consolidated appeal comes at the tail end of a dispute that has dragged its weary length through the courts for more than six years. The dispute traces its history back to January, 1977, when Carlos Romero Barcelo of the New Progressive Party replaced Rafael Hernandez Colon of the Popular Democratic Party as governor of Puerto Rico. Appellees, all members of the New Progressive Party, assumed supervisory positions in the Puerto Rico Department of Education. Many Popular Democratic Party members who held administrative positions in the Department of Education, including three of the appellants in this case, received notice that they would be demoted to teaching positions at the beginning of the 1977–78 school year. A number of these administrators brought suits under 42 U.S.C. § 1983 charging that their demotions were motivated by political discrimination. Many of them ultimately won reinstatement with back pay. *See Fumero Soto v. Chardon,* 681 F.2d 42 (1st Cir.1982), *aff'd,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983).

Appellants here were not parties to the *Fumero Soto* suit; they brought separate § 1983 actions in 1980 and 1981 complaining of political discrimination in violation of the First and Fourteenth Amendments. The district court granted appellees' motions for summary judgment on the ground that the suits were time-barred. *Velazquez v. Chardon,* 576 F.Supp. 476 (D.P.R.1983). Appellants do not dispute that their actions are subject to the one-year limitations period of P.R.Laws Ann. tit. 31, § 5298(2). *See Fumero Soto v. Chardon,* 681 F.2d at 48. This statute of limitations would clearly have barred suits based solely on the 1977 demotions. Appellants allege, however, that the demotions initiated a series of discriminatory acts that constituted "continuing violations" of their con-

stitutional rights. Because the policy of political discrimination was still in force in the year before they filed suit, appellants claim, the suits were not time-barred.

The continuing violation theory, which had its genesis in decisions interpreting Title VII of the Civil Rights Act of 1964, has been applied in a wide variety of circumstances. *See generally* B. Schlei & P. Grossman, Employment Discrimination Law 884–908 (1976). The doctrine is often invoked in cases involving a pattern or policy of employment discrimination in which there has been no single act of discrimination sufficient to trigger the running of the limitations period. One court has explained its effect on the statute of limitations as follows:

"If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed. Similarly, if the statutory violation occurs as a result of a continuing policy, itself illegal, then the statute does not foreclose an action aimed at the company's enforcement of the policy within the limitations period." *Perez v. Laredo Junior College,* 706 F.2d 731, 733–34 (5th Cir.1983) (footnotes omitted).

Appellants have not explained why the continuing violation theory should operate to resurrect their claims that the 1977 demotions were discriminatory, even though these demotions "preced[ed] the filing of the complaint by the full limitations period." *Id.* The niceties of their claims need not detain us here, however, because we agree with the district court's finding that they have not alleged facts sufficient to support their continuing violation theory. ■ A party who wishes to show that he has been the victim of a continuing violation must demonstrate "that not only the injury, but the discrimination, is in fact ongoing." *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979). In *Goldman,* this court explained that it was not enough for an employee to state that ·he had been discriminatorily demoted, and that his attempts to regain his former position had been unavailing:

"A continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination.... If plaintiff meant to claim that the later refusals [to restore him to his old position] formed part of a continuous chain of misconduct, it was incumbent upon him to allege facts giving some indication that the later refusals were themselves separate civil rights violations." 607 F.2d at 1018 (citation omitted).

Thus, appellants cannot succeed by alleging that their 1977 demotions were politically motivated, and that they have since been unsuccessful in regaining their lost positions. They must allege that a discriminatory act occurred or that a discriminatory policy existed in the year before they filed suit. *See United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (noting that "the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists").

■ Although we have urged trial courts to use restraint in granting summary judgment where the discriminatory animus of the defendants is in issue, we have also held that "the presence of issues involving state of mind, intent, or motivation does not automatically preclude summary judgment." *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 929 (1st Cir.1983). The party opposing the motion must give some indication "that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975). The court is not obliged to find that a genuine issue of material fact exists where the only evi-

dence of such an issue is a series of conclusory statements unsupported by specific factual allegations. *See Perez v. Laredo Junior College,* 706 F.2d at 734 ("[T]he mere allegation that the wrong is continuing ... is conclusory and must be evaluated in the light of the facts stated in the complaint and those adduced in support of, or against, the motion for summary judgment"); *Cf. Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982) (holding that a civil rights complaint must "set forth minimal facts, not subjective characterizations, as to who did what to whom and why" in order to survive a motion to dismiss).

■ Appellants have offered nothing more than conclusory claims of political discrimination to support their continuing violation theory. For example, appellants Juan Valles Velazquez and Enelida Rios Salas alleged in their oppositions to the motions for summary judgment:

"[T]here [has] been an ongoing policy of discrimination at the Department of Education since January 1977, and which has continue[d] up to the present against plaintiff since that date. Plaintiff has competed for several other positions after his/her demotion, and has not been selected, solely for his/her political affiliations; and/or has not appeared in most of the "Certificates of Eligibles" of the candidate for higher position as Director or Supervisor within the Department of Education. Also, there [has] been an ongoing policy of discrimination at the Department of Education against plaintiff regarding a distribution of material, work facilities, functions, etc."

Although the answers of appellant Valles to interrogatories establish that he applied for administrative positions as recently as 1982 without success, they do not demonstrate that his lack of success was due to recent political discrimination. For example, no *facts* appear from which one could conclude that those chosen in preference to him were members of the New Progressive Party, or that those chosen in preference to him had qualifications less than or equal to his own.[1] Similarly, appellant Enelida Rios Salas avers in her answers to interrogatories that her School Director was aware of her political affiliation and discriminated against her by giving her inferior materials and work assignments; but her answers do not establish when these acts occurred or whether they occurred disproportionately to members of parties other than the New Progressive Party.

In sum, appellants have alleged facts in support of their claim that they were demoted for discriminatory reasons in 1977; but since the 1977 demotions took place outside the limitations period, they cannot provide the basis for appellants' actions. To escape the bar of the statute of limitations, appellants had to allege facts which would enable a jury to conclude that they had suffered from political discrimination in the year before they filed suit. *See Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d at 929. This, appellants have failed to do. The facts that they have alleged and the reasonable inferences therefrom are not sufficient to support a finding that appellants were treated differently than they would have been treated had they belonged to appellees' political party. The district court properly granted summary judgment.

*Affirmed.*

---

1. Appellant Valles did state in a deposition that when he applied in 1978 for a higher position, the candidate chosen was a member of the New Progressive Party whose qualifications were less than his own. As we have noted, it is not enough for appellant to allege facts in support of the theory that he had been a victim of political discrimination at some time in the past; he had to present some evidence that the discriminatory policy operated in the year preceding November 10, 1980, the date on which he filed suit.