Altonette **JACKSON**

v.

Raoul **GALAN**, et al.

Civ. A. No. 84–5479.

United States District Court,
E.D. Louisiana.

March 27, 1986.

Peter D. Derbes, New Orleans, La., for plaintiff.

A.W. Wambsgans, Metairie, La., for Galan.

Joseph Lepow, Metairie, La., for Lee.

Roger Dallam, Gretna, La., for Spahr.

## MEMORANDUM AND OPINION

SEAR, District Judge.

The plaintiff, Altonette Jackson, brought this civil rights action pursuant to 42 U.S.C. § 1983 against Charles E. Spahr, Distributor, described in the pleadings simply as a Louisiana partnership; Raoul Galan, in his official capacity as Clerk of Court for Jefferson Parish, Louisiana; and Harry Lee, in his official capacity as Sheriff of Jefferson Parish. Thereafter, plaintiff filed a motion for partial summary judgment seeking declaratory and permanent injunctive relief against all defendants. Plaintiff prays for judgment declaring that the actions taken by the defendants garnishing her wages without notice and hearing constitute state action and action under color of state law, depriving her of her due process rights under the Fourteenth Amendment and within the meaning of 42 U.S.C. § 1983. Plaintiff seeks determination of only the issue of liability of the private defendant, Charles E. Spahr, Distributor (hereafter "Spahr"), at this time, reserving her right to litigate the issue of quantum at a later date.

The defendants have filed opposition memoranda as well as motions for summary judgment. All defendants contend that the plaintiff has failed to state a claim upon which relief can be granted and that, in any event, the claim has prescribed. The defendants also raise the defense of good

faith. Defendants Spahr and Galan claim that the plaintiff has failed to exhaust state remedies. Defendant Galan asserts that he is an improper party to this action because the facts giving rise to plaintiff's claim occurred prior to the commencement of his term in office.[1] Finally, defendant Lee maintains that the court lacks subject matter jurisdiction over the plaintiff's claim for attorney's fees.

## I. Factual and Procedural Background

The facts giving rise to this litigation are not in dispute.[2] Accordingly, I find:

(1) On September 3, 1981, Spahr filed suit on a promissory note in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, Louisiana, naming as defendants Jackson Truck Service, Inc., Bernice Jackson and Charles Jackson. At the time the suit was filed and at all pertinent times thereafter, plaintiff Altonette Jackson was the wife of Charles Jackson.[3]

(2) Jackson Truck Service, Inc. was at all pertinent times a corporation owned by Bernice Jackson, plaintiff's mother-in-law, and Charles Jackson.

(3) On or about October 28, 1980, Bernice and Charles Jackson, individually and on behalf of Jackson Truck Service, Inc., executed a bearer promissory note in the sum of $5,000 and negotiated the note to Spahr. Plaintiff did not sign the note.

(4) Plaintiff was not named as a party-defendant in the state court proceeding, nor was she served with either pre- or post-judgment process; and plaintiff made no appearance in the state court action.

(5) On November 11, 1981, a default judgment for $5,000 plus interest, costs and attorney's fees was entered in the state proceeding in favor of Spahr and against Jackson Truck Service, Inc., Bernice Jackson and Charles Jackson. Plaintiff was not named as a judgment debtor.

Service of the judgment upon the plaintiff was neither requested nor attempted.

(6) On or about May 1, 1982, Spahr filed a garnishment petition against Sears Roebuck and Co., the plaintiff's employer. Plaintiff was not served with a copy of the garnishment petition.

(7) More than a year later, on or about July 7, 1983, Spahr obtained a judgment against Sears Roebuck and Co. ordering the garnishment of plaintiff's wages in satisfaction of the November 11, 1981 judgment. Plaintiff was not served with a copy of the garnishment judgment.

(8) Between September 27, 1983 and July 25, 1985, plaintiff's wages, in an amount totalling $5,737.90, were seized by the Sheriff of Jefferson Parish pursuant to a writ of fieri facias processed and issued by the Clerk of Court for Jefferson Parish. Between those dates, the sum of $5,383.57 was forwarded by the Sheriff to Spahr pursuant to the judgment of garnishment. The sum of $354.33 was retained by the Sheriff for his commission.

On November 13, 1984, plaintiff filed a complaint in this Court and moved for a preliminary injunction seeking to enjoin further garnishment of her wages. A hearing was held on November 27, 1984 and, after considering the law, evidence and arguments of counsel, I granted plaintiff's motion on December 6, 1984.

## II. Law

The plaintiff does not challenge the constitutionality of Louisiana's community property laws. Rather, she challenges the procedure allowed by those laws of taking property with neither notice nor hearing.

Louisiana Code of Civil Procedure article 735 provides in pertinent part:

Either spouse is the proper defendant, during the existence of the marital community, in an action to enforce an obli-

---

**1.** This is a defense based on misjoinder of parties which, of course, is not a ground for dismissal. *See* Rule 21 of the Federal Rules of Civil Procedure.

**2.** Defendants do not dispute plaintiff's statement of uncontested material facts.

**3.** The couple had physically separated, although not judicially.

gation against community property... When only one spouse is sued to enforce an obligation against community property, the other spouse is a necessary party....

Louisiana Code of Civil Procedure article 926(8) establishes the dilatory exception of nonjoinder of a necessary party and article 928 dictates that dilatory exceptions must be pleaded prior to answer or judgment by default. If they are not, they are considered waived.

Taken singly, these articles are apparently harmless and, in fact, have the salutary effect of enhancing creditors' rights and "greasing the wheels" of litigation procedure. However, as the plaintiff has unfortunately discovered, the combination of these articles can result in a blatant invasion of due process rights. If, for instance, the spouse who is sued on a community obligation fails to raise the dilatory exception of nonjoinder of a necessary party, the other spouse is placed in the inauspicious position of having his or her property placed at peril of seizure with neither notice nor hearing. Of course, it is axiomatic that at a minimum the Due Process Clause of the Fourteenth Amendment requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950).

### A. Failure to State A Claim

Defendants rely, in large part, upon the case of *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) for the proposition that the plaintiff has failed to state a claim upon which relief can be granted. In *Lugar*, the plaintiff brought a civil rights action under 42 U.S.C. § 1983 against his creditor/lessor after the latter had affected a prejudgment attachment of the plaintiff's property. The attachment was accomplished through a Virginia statute which required only that Edmundson allege, in an *ex parte* petition, a belief that Lugar was disposing of or

might dispose of his property to the prejudice of his creditors. The clerk of the state court thereafter issued a writ of attachment which was in turn executed by the county sheriff.

Although the *Lugar* court was mainly concerned with the state action requirement of plaintiff's § 1983 cause of action— an issue germane to the instant motion— defendants here cite language which, they contend, supports their motions for summary judgment. That language reads:

Petitioner did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute.

102 S.Ct. at 2756 [footnote omitted].

The above quoted language was, in fact, addressed to the state action issue in *Lugar*. This much is clear from a reading of a previous portion of the Supreme Court's opinion:

Count two alleged that the deprivation of property resulted from respondents' "malicious, wanton, willful, opressive [*sic*], [and] unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State... That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.

*Id.* at 2755.

The more pertinent portion of the court's opinion, however, fully supports the conclusion that Ms. Jackson's claims fall squarely within the ambit of 42 U.S.C. § 1983. As the *Lugar* majority explained:

Count one is a different matter. That count describes the procedures followed by respondents in obtaining the prejudg-

ment attachment... Although it is not clear whether petitioner is referring to the state-created procedure or the misuse of that procedure by respondents, we agree with the lower courts that the better reading of the complaint is that petitioner challenges the state statute as procedurally defective under the Fourteenth Amendment.

While private misuse of a state statute does not describe conduct that can be attributed to the State, **the procedural scheme created by the statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action,** if the second element of the state-action requirement is met as well.

*Id.* at 2755–56 [emphasis supplied] [footnote omitted].

■ This is precisely Ms. Jackson's complaint. She does not allege abuse or misuse of the Louisiana codal scheme. Instead, she avers that the State procedure, fully complied with by the defendants, has resulted in an unconstitutional deprivation of her property in violation of the Fourteenth Amendment. That complaint is perfectly suited to a § 1983 cause of action.

■ Furthermore, there is no doubt that defendant Spahr is a "state actor" within the meaning of 42 U.S.C. § 1983. In *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), the United States Supreme Court held that:

Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

86 S.Ct. at 1157 [footnote omitted]. That holding is reinforced by numerous subsequent Supreme Court cases, including *Lugar, supra.*

■ Of course, the Sheriff of Jefferson Parish and the Clerk of Court were also acting under color of state law in processing, issuing and executing the writ of fieri facias authorizing the garnishment of plaintiff's wages. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Norton v. Liddel,* 620 F.2d 1375 (10th Cir.1980); *United States v. Wiseman,* 445 F.2d 792 (2d Cir.1971), *cert. denied,* 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971).

## B. Statute of Limitations

Defendants contend that the plaintiff's cause of action has prescribed. It is true, as defendants contend, that the applicable statute of limitations is one year. This is so because "[i]t is well established ... that wrongs committed by Louisiana state officials in violation of federal law are considered to be torts subject to Louisiana's one-year statute of limitations for tort actions..." *Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir.1983). Plaintiff's complaint is therefore subject to the limitations of Louisiana Civil Code article 3492.[4]

Ms. Jackson's wages were initially garnished on September 27, 1983. The complaint in this case was not filed until November 13, 1984, more than one year later. In § 1983 cases, the statute of limitations begins to run when the "plaintiff knows or has reason to know of the injury which is the basis of the action." *Lavellee v. Listi,* 611 F.2d 1129, 1131 (5th Cir.1980). Thus, the one-year liberative prescription statute first began to run not later than September 27, 1983.

■ The plaintiff's claim, however, has not expired. We deal here with a continuing violation of plaintiff's constitutional rights. The holding in *Perez v. Laredo Junior College,* 706 F.2d 731, 733–34 (5th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984) is applicable to this case:

To establish a continuing violation ... the plaintiff must establish that the un-

---

**4.** Louisiana Civil Code article 3492 provides in pertinent part:

Delictual actions are subject to a liberative prescription of one year.

constitutional or illegal act was a part of "standard operating procedure," a fixed and continuing practice. If the discrimination [or other constitutional violation] alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory [or constitutional] violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed. [Footnotes omitted.]

Although *Perez* was an employment discrimination case arising under § 1983, the basis of the plaintiff's cause of action was not crucial to the determination of the issue of prescription. The actions of which Ms. Jackson complains are distinct, continuing violations of her constitutional rights. For each garnishment of her wages, the limitations period began anew. Therefore, any claims for damages against defendant Spahr arising from the garnishment of plaintiff's wages between September 27, 1983 and November 13, 1983 are prescribed. Such claims relating to garnishments occurring after the latter date are not prescribed since the limitations statute was interrupted by the filing of suit on November 13, 1984. Of course, as to the Sheriff and the Clerk of Court, the defense of prescription fails since those defendants participated in the garnishment of plaintiff's wages less than one year from the date when suit was filed and since plaintiff seeks no monetary award from these defendants.

## C. Exhaustion of Remedies

■ Defendants Spahr and Galan raise the issue of exhaustion of state remedies. They rely on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) in support of that defense. However, the Supreme Court has held that, as a general rule, 42 U.S.C. § 1983 does not "require a litigant to pursue state judicial remedies prior to commencing an action under this section." *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 1798, 64 L.Ed.2d 440 (1980). Moreover, *Parratt, supra*, was a prisoner suit involving the negligent taking of property. *Parratt* does not apply where "it is the state system itself that destroys a complainant's property interest, by operation of law..." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). The exhaustion of state remedies defense is therefore not applicable in the present context.

## D. Misjoinder

Defendant Galan contends that he is an improper party to this suit inasmuch as, at the time of the initial garnishment, he was not the clerk of court. Mr. Galan is correct in asserting that, at least initially, he was not involved in the issuance of the writ of fieri facias which resulted in the garnishment of plaintiff's wages. William Justice, Sr. was the clerk of court at the time of the initial garnishment. But this fact does not entitle Mr. Galan to dismissal or summary judgment.

■ Ms. Jackson's suit is brought against the Clerk of Court for Jefferson Parish in his official capacity. Rule 25(d) of the Federal Rules of Civil Procedure provides:

(1) When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

(2) When a public officer sues or is sued in his official capacity, he may be described as a party by his official title

rather than by name; but the court may require his name to be added.

Thus, if Ms. Jackson had sued Mr. Galan's predecessor, an automatic substitution under Rule 25(d)(1) would have been necessitated when Mr. Galan assumed the position of clerk of court for Jefferson Parish. Instead, Ms. Jackson chose the quite logical procedure of naming as party defendant the clerk of court at the time suit was filed. It should be added that the suit is against the office of the clerk of court, not against the clerk personally. The personal involvement of Mr. Galan is not a prerequisite to a suit for equitable relief against him in his official capacity. *Schnell v. City of Chicago*, 407 F.2d 1084 (7th Cir.1969). At any rate, the plaintiff has alleged that Mr. Galan was involved in the garnishment of her wages.[5] Plaintiff has also alleged in her statement of uncontested material facts that her wages were garnished through July 25, 1985, a date occurring after Mr. Galan's term in office had begun. Since Mr. Galan has not controverted that allegation in his own statement of facts as to which there exists a genuine issue, Local Rule 3.10 requires that I deem the plaintiff's allegation an admitted fact. Accordingly, I find Mr. Galan is a proper party to this suit.

**E. Good Faith**

■ The defendants also raise the issue of good faith. This defense is immaterial to a claim for declaratory and injunctive relief. *Paxman v. Campbell*, 612 F.2d 848 (4th Cir.1980); *Hansbury v. Regents of Univ. of Cal.*, 596 F.2d 944 (10th Cir.1979); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir.1977). Therefore, defendants Lee and Galan may not assert a good faith defense.

Furthermore, the good faith defense has not been extended to private citizens. *See, e.g., Downs v. Sawtelle*, 574 F.2d 1 (1st Cir.1978). Accordingly, defendant Spahr may not avail itself of this defense either.

**III. Remedies**

**A. Declaratory Relief**

Considering the foregoing, plaintiff is entitled to judgment declaring the following:

(1) Charles E. Spahr, Distributor's use of Louisiana's garnishment procedures against plaintiff constitutes state action and action under color of state law within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

(2) The Clerk of Court for Jefferson Parish's actions in processing and issuing the writ of fieri facias authorizing the garnishment of plaintiff's wages constitute state action and action under color of state law within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

(3) The Sheriff of Jefferson Parish's actions in executing the writ of fieri facias and taking into his possession plaintiff's wages constitute state action and action under color of state law within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.[6]

(4) The seizure by garnishment of plaintiff's wages based upon a judgment arising out of an action in which she was neither named as a party defendant nor served with process of any kind deprived plaintiff of her property without due process of law in violation of the Fourteenth

---

5. Paragraph 17 of plaintiff's complaint reads as follows:

> Defendants Raoul Galan, Harry Lee, and Charles E. Spahr, Distributor, have deprived, and continue to deprive plaintiff Altonette Jackson of her property, to-wit: her wages, under color of state law without due process of law, in violation of the Due Process clause of the Fourteenth Amendment to the Constitution of the United States, and in violation of 42 U.S.C. Section 1983.

6. Defendant Lee claims that this court lacks subject matter jurisdiction over the plaintiff's claim for attorney's fees. Sheriff Lee argues that without an underlying statutory violation, 42 U.S.C. § 1988 cannot serve as an independent basis sufficient to confer subject matter jurisdiction. However, since I have found a violation of 42 U.S.C. § 1983 as well as of the Fourteenth Amendment, this defense is abrogated.

Amendment to the United States Constitution.

## B. Injunctive Relief

■ Plaintiff also seeks injunctive relief against all defendants in this proceeding. Plaintiff can be fully compensated monetarily by proceeding in an action for damages against defendant Spahr. That action, of course, would arise under 42 U.S.C. § 1983 and, if successful, would provide the plaintiff with the legal remedies provided by that statute. *See* Wright & Miller, Federal Practice and Procedure: Civil §§ 2944 at 392–402. Accordingly, plaintiff's application for an injunction is DENIED.

The plaintiff further prays for determination of the liability of defendant Spahr and the return of her withheld wages. Because I have found that (1) Spahr is a state actor for purposes of the Fourteenth Amendment and 42 U.S.C. § 1983; (2) Spahr is not entitled to a good faith defense; and (3) plaintiff's wages were seized in violation of her due process rights, the liability of defendant Spahr has been determined. Since the amount of wages seized in violation of plaintiff's constitutional rights is an element of damages, I do not reach that issue in this proceeding. That issue is properly for consideration at the trial of the merits of plaintiff's claim.

Accordingly, plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part and defendants' motions for summary judgment are DENIED.