**Davine ALEXANDER, et al., Plaintiffs,**

**v.**

**LOCAL 496, LABORERS' INTERNA-
TIONAL UNION OF NORTH
AMERICA, Defendant.**

**No. C84–3916.**

United States District Court,
N.D. Ohio, E.D.

March 25, 1987.

M. Umar Abdullah, Rogers, Horton & Forbes, Edward G. Kramer, Kramer & Tobocman, Cleveland, Ohio, for plaintiffs.

Lawrence M. Oberdank, Alan Belkin, Shapiro, Turoff & Gisser, Cleveland, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KRENZLER, District Judge.

This motion for summary judgment arises out of three consolidated cases, brought by several black plaintiffs against defendant Laborers' International Union of North America, Local 496 ("Union"). The plaintiffs, in their complaint, allege that the Union has a policy of accepting new members which is in violation of 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("1981"). Following consolidation of the cases, the Union submitted this motion for summary judgment against six (6) of the plaintiffs, pursuant to Fed.R. Civ.P. 56. For the reasons provided below,

the Court denies the Union's motion for summary judgment.

The six (6) plaintiffs who are the subject of this motion for summary judgment attempted to become members of the Union at different times over a period of time extending from 1983 to 1984. The major impetus for becoming members of the Union was the possibility of receiving employment at the construction site of the Perry Nuclear Power Plant ("Perry"), in Lake County, Ohio. Each of the six (6) plaintiffs went to the defendant's Union hall, where they were told that the Union was not accepting new members at that time. Several of the plaintiffs were also told that before they could become members of the Union, they first had to have a job in the construction industry.

The plaintiffs subsequently filed charges with the Equal Employment Opportunity Commission ("EEOC") in May and June of 1984. The plaintiffs then instituted this action following receipt of their right-to-sue letters from the EEOC.

The defendant, in its motion for summary judgment, argues that the motion should be granted on the basis of two issues. The first issue, against four (4) of the plaintiffs, is that their Title VII claims are barred by the statute of limitations and their 1981 claims are barred by the doctrine of laches. The second argument applying to all six (6) of the plaintiffs named in the summary judgment motion, is that the plaintiffs have failed to state a prima facie case of discrimination and, therefore, the defendant's motion for summary judgment should be granted. The plaintiffs filed a brief in opposition to the motion for summary judgment.

Summary judgment is rendered for the movant only if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In ruling on a motion for summary judgment, "the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant." *Bohn*

*Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962).

### I.

In order to determine whether the defendant is entitled to summary judgment against the four plaintiffs on the issue of statute of limitations and laches, it is necessary to first review the events which led to the filing of the charges.

a. *Davine Alexander.* Plaintiff Davine Alexander, after hearing that there were job opportunities at the Perry construction site, made her first visit to the Union hall in August of 1982. At this time she was told that the Union was not accepting applications for new members. During her second trip to the Union hall in September 1982, Alexander was also told that in order to become a member of the Union, one must be employed by a contractor in the construction business. Alexander made one more trip to the Union hall within a few weeks of her second trip, with the same results. Alexander filed charges with the EEOC on May 4, 1984.

b. *Dwayne Allen Curry.* Plaintiff Curry initially applied for employment with a contractor for Perry in 1982. In May of 1982, Curry went to the Union hall, where he was told that the person who he should speak to was not present. Curry returned twice to the Union hall, with his last visit in June 1982. Both times Curry was given the same response. Curry filed charges with the EEOC on May 7, 1984.

c. *Everett L. Howard.* Plaintiff Howard initially sought employment at the Perry construction site. In May 1982, Howard made his first appearance at the Union hall. He was told to sign a list of names and a Union representative would then get in contact with him. Three weeks to a month later, Howard returned to the Union hall, once again signing his name to the list. He did not contact the Union again. Howard filed charges with the EEOC on May 4, 1984.

d. *James Carson.* Plaintiff Carson visited the Perry construction site twice before going to the Union hall, sometime in 1983. Carson was told to leave his name.

Carson called the Union hall twice after his visit. The telephone calls were his last contact with the Union. He filed charges with the EEOC on May 7, 1984.

### II.

The general statute of limitations rule for Title VII is that the person alleging a violation of Title VII must file a charge with the EEOC within one hundred and eighty (180) days of the alleged violation. 42 U.S.C. § 2000e–5(e). In those states which have a comparable law and procedures for handling similar civil rights complaints, called deferral states, the statute of limitations period is extended to three hundred (300) days for filing with the EEOC. 42 U.S.C. § 5000e–5(e).

Congress has not established a specific statute of limitations period for § 1981. Therefore, the Supreme Court has directed that the courts turn to analogous state statute of limitations to determine the limitations period for § 1981. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). This Court has held that the appropriate statute of limitations period for § 1981 cases is one year. *See* Order Granting in Part and Overruling in Part Defendant's Motion for Summary Judgment, *Rodriquez v. 21st Point Nautilus Raquetball Club*, No. C85–3341Y (December 18, 1986).

An exception to the general rule occurs when the plaintiff alleges that he or she has been harmed by an actual policy of discrimination held by the defendant, or by a *series* of acts performed by the defendant. Termed a continuing violation, this exception holds that each day that a discriminatory policy is in force is a new violation of Title VII or § 1981. *See Chung v. Pamona Valley Community Hospital*, 667 F.2d 788, 791–92 (9th Cir.1982) (applying continuing violation theory to § 1981 suit). This exception permits persons allegedly harmed by a continuing violation to maintain his or her action even if the last discrete act of discrimination against that individual falls outside of the statute of limitations period.

The term "continuing violation" has been defined by various courts. *See Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823, 827 (6th Cir.1981) (defining continuing violation as "ongoing discriminatory policy"); *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) (defining a continuing violation as "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period") (quoting *B. Schlei and P. Grossman*, Employment Discrimination Law 232 (Supp.1979)); *Perez v. LaRedo Junior College*, 706 F.2d 731, 733 (5th Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984) (to establish continuing violation, plaintiff must show "that the unconstitutional or illegal act was a part of the standard operating procedure, a fixed and continuing practice"); *see also Jewett v. International Telephone and Telegraph Corp.*, 653 F.2d 89, 91–92 (3rd Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981) (defining a continuing violation as "standard operating procedure").

Therefore, when a plaintiff files a charge of hiring discrimination against a defendant, four scenarios are possible with respect to the issue of statute of limitations. The first possibility is that the plaintiff alleges one or several discrete acts of discrimination, with all acts occurring outside of the statute of limitations period. The second scenario occurs when one or several discrete acts of discrimination are alleged with at least one of the acts falling within the statute of limitations period. The third scenario arises when the plaintiff alleges that a past discriminatory policy, in effect outside of the statute of limitations period, adversely affects or affected the plaintiff. The final possibility is where the plaintiff alleges that he or she has been, or is presently being, harmed by a discriminatory policy which continues to be in force within the statute of limitations period.

1. *Discrete acts of discrimination falling outside of the statute of limitations period*. The general statute of limitations rules apply in this situation and, therefore, a cause of action does not exist. If a discrete act of discrimination falls within the statute of limitations period, of course it is actionable.

2. *Several acts of discrimination alleged with at least one act occurring within the statute of limitations period and one falling outside of that period.* Being a series of discrete acts and, hence, an example of a continuing violation, the discrete act or acts which fall within the statute of limitations period are actionable. Although the discrete acts falling outside of the period of limitations are not actionable, they may be introduced as evidence of present violations, to the extent permitted by the rules of evidence. *See Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 760 (9th Cir.1980) (quoting the Supreme Court's decision in *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977), that a past discriminatory act, falling outside of the statute of limitations period is not actionable, but "it may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue,....").

3. *Plaintiff alleges a past discriminatory policy which was in effect outside of the statute of limitations period.* In this scenario, the plaintiff does more than allege discrete discriminatory acts. Here, the plaintiff alleges that he or she was or is still being harmed by a discriminatory policy that existed outside of the statute of limitations period. The Supreme Court, in *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977), held that in this situation, because there was not an allegation of a present violation of Title VII, no cause of action existed. It is the continuance of a policy, not the continuance of harmful effects of a policy, which creates a continuing violation.

4. *Plaintiff alleges that he or she was, or is still being, harmed by a present ongoing policy of discrimination held by the defendant.* In this other example of a continuing violation, the general statute of limitations rules still apply; however, each day that the policy continues, is considered

a separate discriminatory act. Therefore, the statute of limitations period begins anew each day that the discriminatory policy remains in existence. *See Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823, 827 (6th Cir.1981) ("We do not think that Title VII requires that suit be filed when the applicant is initially discriminated against. If an ongoing discriminatory policy is in effect, the violation of Title VII is ongoing as well."); *see also Perez v. LaRedo Junior College*, 706 F.2d 731 (5th Cir. 1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984). (If employment discrimination occurs as a result of a continuing policy, itself illegal, then statute of limitations does not foreclose an action aimed at employer's enforcement of the policy within the limitations period.)

▌ The general rule for recovery of damages in continuing violation suits, absent an express statutory provision, is consistent with the basic theory of continuing violations. The amount of damages recoverable in such cases are those damages which occurred within the statute of limitations period. In a continuing violation case, where a series of discrete acts are proven, the plaintiff may recover only for the damages arising out of those acts within the statute of limitations period, even though acts falling outside of the limitations period may be admitted into evidence. Those plaintiffs who prove a policy of discrimination may recover only those damages which they can prove occurred within the statute of limitations period. *See, e.g., Perez v. LaRedo Junior College*, 706 F.2d 731, 734 (5th Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984) (if violation occurs from continuing policy of discrimination, company's enforcement of policy within limitations period actionable); *Sevako v. Anchor Motor Freight, Inc.*, 792 F.2d 570 (6th Cir.1986) (in 29 U.S.C. § 185 continuing violation cases, only those improper acts "occurring six (6) months prior to the institution of suit ... are actionable."). *See also* 42 U.S.C. § 2000e–5(g) (in Title VII cases, "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge ...").

## III.

▌ In the present case, without the continuing violation exception to the general statute of limitations rules, the four plaintiffs' claims would be dismissed. (*See* scenario 1.) However, this Court finds that taken in the light most favorable to the plaintiffs, the plaintiffs have alleged and shown sufficient evidence to withstand summary judgment on the basis of a continuing violation theory. (*See* scenario 4.)

The complaint filed by the four plaintiffs allege that the Union maintains "recruitment and selection procedures, standards, policies and practices which unlawfully deter qualified black persons from applying to membership ..." in the Union. Additionally, the plaintiffs allege that these policies and procedures deny qualified blacks employment at the Perry site.

Exhibits and affidavits attached to the plaintiffs' brief in opposition to the motion for summary judgment demonstrate that there are material issues of fact regarding whether the Union has a policy of discrimination against blacks. The alleged statistical underrepresentation of black persons in the Union as compared to the general labor pool, and the fact that white persons were waived into the Union without meeting the requirements which apparently barred the plaintiffs from joining the Union, is sufficient evidence for the plaintiffs to withstand a motion for summary judgment on the basis of a continuing violation. Therefore, because the plaintiffs have alleged and have given sufficient supportive evidence that they were and are still being harmed by a discriminatory policy in effect during the statute of limitations period, the Court holds the complaint timely.

## IV.

▌ The defendant Union has also moved for summary judgment against six of the plaintiffs, the four plaintiffs previously mentioned and Ronald Colvin and Art. T. Tomblin, on the basis that the plaintiffs have failed to state a prima facie case of discrimination. The Court denies the

Union's motion on this issue also. As already stated, the plaintiffs in their brief in opposition to summary judgment attached exhibits and affidavits which raise material issues of fact as to whether the Union had or has a policy of discrimination. The waiver of the requirements for Union membership for many persons, all white, and the failure to waive the requirements for any blacks, along with the possible statistical underrepresentation, raises material issues of fact. On this basis, the Court denies the defendant's motion.

V.

Therefore, finding material issues of fact on both issues addressed in the defendant's motion for summary judgment, the Court hereby denies the motion.

IT IS SO ORDERED.